COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

ERIC ORTIZ,
)
 No. 08-02-00203-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 171st District Court

)


THE STATE OF TEXAS,
)
 of El Paso County, Texas

)


 Appellee.
)
 (TC# 990D05599)


O P I N I O N



 Eric Ortiz was charged by a two-count indictment with aggravated robbery and aggravated
kidnapping. The jury found him guilty of both offenses. The court assessed punishment at thirty
years' imprisonment on both counts. We affirm.

FACTUAL SUMMARY


 On November 6, 1999, Elizabeth Sepulveda Lopez was working at her brother's convenience
store in Vinton. At about 10:30 p.m. that night, Lopez was working the cash register, her husband
was in the bathroom, and their three children were asleep on some chairs behind the counter. 
Appellant entered the store through the front door with a white stocking over his face. With a knife
in his hand, Appellant ran behind the cash register, chased Lopez around the counter, and
demanded money. Lopez was afraid Appellant was going to stab her. She was able to escape
through the back door, but once outside, she realized she had left her children asleep inside the store. 
As she re-entered the store, Lopez began screaming, hoping to wake her children and attract her
husband's attention. He was still in the bathroom and unaware of the situation. The children woke
up and ran for the door while their father came out of the bathroom.

 Appellant panicked, grabbed nine-year-old Nathan, and put a knife to his throat. He told
Lopez to give him the money or he was going to hurt the boy. Appellant held onto Nathan so that
he could not escape. Lopez opened the cash register and gave Appellant one dollar bills. Appellant
told her, "I want the real money." Lopez then handed her husband between $400 and $500, in $5,
$10, and $20 denominations, and he in turn gave the money to Appellant. Appellant pushed Nathan
to the floor and fled from the store.

 Officers from the El Paso County Sheriff's Department were called to the scene. Lopez told
the officers that she didn't know the intruder's name, but she had an idea who he was. He had come
into the store almost every day for about three months. He had apparently been dating another
customer named Norma who had an account at the store and had authorized him to charge items on
her account. Lopez also recognized some tattoos on the man's neck. Lopez and her husband
directed the officers to Norma's house in anticipation of finding the assailant. Upon speaking with
a resident at that house, the officers discovered the name of the man they were looking for was Eric
Ortiz. The description offered by Lopez matched the description given by the resident at Norma's
house. This information led to Appellant's arrest.

COMPETENCY OF A CHILD WITNESS


 In Point of Error No. One, Appellant complains that the court erred in allowing Nathan Lopez
to testify. Nathan was nine years old at the time of the robbery and eleven years old at the time of
trial. Appellant asked the trial court to examine Nathan on voir dire to determine whether he was
competent because of his age. Out of the jury's presence, the trial court asked Nathan if he knew
what the "oath" meant and Nathan replied that he did not. When asked what the truth was, he
replied, "To tell the truth." He was unable to articulate a definition or an example of a lie. The
prosecutor then began asking Nathan questions about the difference between the truth and a lie. 
Nathan understood the difference and said that it was "good" to tell the truth and "bad" to tell a lie. 
Counsel questioned him further by asking the color of certain objects in the courtroom and phrasing
questions based on his answers to demonstrate that the child could differentiate between the truth
and a lie. Finally, Nathan promised that he would tell the truth.

 As a general rule, a child is competent to testify unless, after examination by the court, he
does not appear to possess sufficient intellect to relate transactions with respect to which he is
interrogated. Tex.R.Evid. 601(a)(2); Hollinger v. State, 911 S.W.2d 35, 38 (Tex.App.--Tyler 1995,
pet. ref'd); Rodriguez v. State, 772 S.W.2d 167, 170 (Tex.App.--Houston [14th Dist.] 1989, pet.
ref'd). In determining competency, the court considers three elements: (1) the competence of the
witness to observe intelligently the events in question at the time of the occurrence; (2) the capacity
of the witness to recollect the events; and (3) the capacity of the witness to narrate the facts. The
third element requires the witness to be able to understand the questions that are asked, to be able
to frame intelligent answers to those questions, and to be able to understand the moral responsibility
to tell the truth. Watson v. State, 596 S.W.2d 867, 870 (Tex.Crim.App. 1980); Hollinger, 911
S.W.2d at 38-39. A court's determination as to competency will not be disturbed on review unless
an abuse of discretion is shown. Broussard v. State, 910 S.W.2d 952, 960 (Tex.Crim.App. 1995), 
cert. denied, 519 U.S. 826, 117 S.Ct. 87, 136 L.Ed.2d 44 (1996). An abuse of discretion occurs
where a trial court acts arbitrarily and unreasonably, without reference to guiding rules or principles
of law. See Woods v. State, 14 S.W.3d 445, 450 (Tex.App.--Fort Worth 2000, no pet.).

 Whether a child witness is able to define "the truth" and "a lie" is not the issue. The
important inquiry is whether the child demonstrates an understanding of the difference as well as the
need to be truthful. See Upton v. State, 894 S.W.2d 426, 429 (Tex.App.--Amarillo 1995, pet. ref'd). 
Nathan's testimony demonstrated that, while he could not define the terms, he understood the
difference. While his responses showed some conflict and confusion, the bulk of his testimony
indicated sufficient maturity and accuracy in his recollection. He was able to rely on diagrams and
photographs that depicted the store when testifying, he was able to recall what was said and what
occurred on the night of the robbery, and he was able to offer a description of Appellant. See Long
v. State, 770 S.W.2d 27, 29 (Tex.App.--Houston [14th Dist.] 1989), rev'd on other grounds, 800
S.W.2d 545 (1990)(holding that court's finding of competency under similar circumstances did not
constitute abuse of discretion). Because we cannot conclude the trial court abused its discretion
when it ruled Nathan competent to testify, we overrule Point of Error No. One.

CROSS-EXAMINATION OF STATE'S WITNESS


 In Point of Error No. Two, Appellant complains of the trial court's refusal to allow him to
cross- examine Lopez about her possible bias or a motive to press false charges. Appellant
emphasizes that the State only called three witness: Lopez, Nathan, and a sheriff's deputy. He
argues that Nathan only testified to what his mother had told him to say and that the deputy only
testified to hearsay. Thus, the only "real" witness was Lopez and the court abused its discretion in
denying effective cross-examination. His argument implicates the constitutional protections of the
Confrontation Clause. The Sixth Amendment provides that a defendant is entitled to be confronted
with the witnesses against him. See U.S. Const. amend. VI; Tex.Const. art. I, § 10; Lopez v. State,
18 S.W.3d 220, 222 (Tex.Crim.App. 2000).

 Cross-examination serves three general purposes: it serves to identify the witness with the
community so that independent testimony may be offered concerning the witness's reputation for
veracity in that community; it allows the jury to assess the credibility of the witness; and, it allows
facts to be elicited which tend to discredit the witness by showing that her testimony in chief was
untrue or biased. Alford v. United States, 282 U.S. 687, 691-92, 51 S.Ct. 218, 219, 75 L.Ed. 624
(1931), citing Tla-Koo-Yel-Lee v. United States, 167 U.S. 274, 17 S.Ct. 855, 42 L.Ed. 166 (1897);
Carroll v. State, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996). The right is not unlimited and the trial
court retains wide latitude to impose reasonable limits on cross-examination. Delaware v. Van
Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431, 1434-35, 89 L.Ed.2d 674 (1986); Carroll, 916 S.W.2d
at 498. Specifically, the trial court maintains broad discretion to impose reasonable limits to avoid
harassment, prejudice, confusion of the issues, endangering the witness, and the injection of
cumulative or collateral evidence. Lopez, 18 S.W.3d at 222. In weighing whether evidence must
be admitted under the Confrontation Clause, the trial court should balance the probative value of the
evidence sought to be introduced against the risk its admission may entail. Id. at 222. Claims of
improper limitation should be reviewed on a case-by-case basis, carefully taking into account the
defendant's right to cross-examine and the risk factors associated with admission of the evidence. 
Id. Absent a clear abuse of discretion, the trial court's ruling is not subject to reversal. Love v. State,
861 S.W.2d 899, 903 (Tex.Crim.App. 1993). 

 Appellant attempted to cross-examine Lopez about the convenience store's financial
difficulties. He tried to establish that he was not the perpetrator and suggested that the events were
staged for the purpose of filing a false insurance claim. Asked on voir dire whether she owned an
interest in her brother's store, Lopez testified that she had worked as an employee for the past seven
years. Lopez provided information about her brother's criminal history and claimed she was not
familiar with any insurance claims concerning the store. She did indicate that her brother had filled
out paperwork for several beer runs, in which beer had been stolen from the store. The trial court
determined that Lopez's testimony concerning the store's financial status and her brother's legal
woes was not based on firsthand knowledge, was irrelevant, and the probative value was clearly
outweighed by the potential for unfair prejudice and confusion of the issues.

 A trial court may limit the cross-examination of a witness without violating a criminal
defendant's constitutional right to confrontation of witnesses if the prejudicial effect clearly
outweighs the probative value. Tan Kien Tu v. State, 61 S.W.3d 38, 54 (Tex.App.--Houston [14th
Dist.] 2001, pet. ref'd.); Nevels v. State, 954 S.W.2d 154, 157 (Tex.App.--Waco 1997, pet. ref'd.).
Finding no error, we overrule Point of Error No. Two.

SUFFICIENCY OF THE EVIDENCE


 In Point of Error No. Three, Appellant challenges the sufficiency of the evidence supporting
his convictions. He specifically disputes the sufficiency of the evidence proving that the crimes
actually took place and that he was the perpetrator.

 In reviewing legal sufficiency, we consider all the evidence, both State and defense, in the
light most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159
(Tex.Crim.App. 1991). This familiar standard gives full play to the responsibility of the trier of fact
fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences
from basic to ultimate facts. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do
not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier
of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted
at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843.
Further, the standard of review is the same for both direct and circumstantial evidence cases. Geesa,
820 S.W.2d at 158.

 When conducting a factual sufficiency review, we consider all of the evidence but we do not
view it in the light most favorable to the verdict. Clewis v. State, 922 S.W.2d 126, 129
(Tex.Crim.App. 1996); Levario v. State, 964 S.W.2d 290, 295 (Tex.App.--El Paso 1997, no pet.). 
We review the evidence weighed by the fact finder that tends to prove the existence of the elemental
fact in dispute and compare it with the evidence that tends to disprove that fact. Johnson v. State,
23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996),
cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). A defendant challenging the
factual sufficiency of the evidence may allege that the evidence is so weak as to be clearly wrong and
manifestly unjust, or in a case where the defendant has offered contrary evidence, he may argue that
the finding of guilt is against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 11. Although we are authorized to set aside the fact finder's determination under either
of these two circumstances, our review must employ appropriate deference and should not intrude
upon the fact finder's role as the sole judge of the weight and credibility given to any evidence
presented at trial. See Johnson, 23 S.W.3d at 7. We are not free to reweigh the evidence and set
aside a verdict merely because we feel that a different result is more reasonable. Cain v. State, 958
S.W.2d 404, 407 (Tex.Crim.App. 1997); Clewis, 922 S.W.2d at 135.

 Here, the jury was presented with direct evidence by the testimony of both Elizabeth Lopez
and her son, Nathan. On the night of the robbery, Appellant was wearing a white sweater and dark
pants with a pair of white panty hose covering his face. Lopez was able to see through the panty
hose and recognize him. For several months before the robbery, Appellant had frequently come into
the store to purchase cigarettes and beer. During that time, Lopez had noticed numerous tattoos,
including one of a spider that was visible on his neck. On the night in question, Appellant did not
have the stocking pulled down over his neck and Lopez was able to see and recognize the tattoos. 
We find the evidence to be both factually and legally sufficient. We overrule Point of Error No.
Three. Having overruled all points of error, we affirm.



October 23, 2003 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 1

Larsen, McClure, and Chew, JJ.


(Do Not Publish)